FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 02, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ANGELA W.,[1]

           Plaintiff,

   v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,[2]

          Defendant.

No.    4:20-cv-5164-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Plaintiff Angela W. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the record reveals that Plaintiff was more functionally impacted by her brain aneurysm in the years immediately following the aneurysm

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] On July 9, 2021, Ms. Kijakazi became the Acting Commissioner of Social Security. She is therefore substituted for Andrew Saul as Defendant. Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

rather than at the time of the administrative hearing, the ALJ erred by failing to separately consider the evidence in closer proximity to the brain aneurysm as compared to the evidence in closer proximity to the administrative hearing. This error was harmful. On remand, the ALJ is to consider whether, at a minimum, a closed period of disability is to be awarded. For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 18, and denies the Commissioner's Motion for Summary Judgment, ECF No. 19.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability evaluation proceeds to step three.[9]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[10] If an impairment or combination of impairments meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant can perform past work, benefits are denied.[13] If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title 2 application, alleging a disability onset date of October 17, 2012—the date on which she suffered a brain aneurysm.[18] Her claim was denied initially and on reconsideration.[19] An administrative hearing was held before Administrative Law Judge Stewart Stallings.[20] During the hearing, Plaintiff testified that she began part-time work (about 18.5 hours per week) about four months before the hearing because she financially needed to and that, even though her employer desired her to work more hours, she was physically unable to work

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 168–78.

[19] AR 102–08, 110–16.

[20] AR 34–62.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

more hours.[21] She testified that due to the brain aneurysm, spinal impairments, and other physical and mental impairments, she has difficulty remembering things, stutters when she is nervous and stressed, has low back, neck, and leg pain, has numbness in her hands after twenty minutes of use, gets anxious around people, experiences fatigue due to medications, has balance difficulties, and suffers headaches.[22] She also testified that she was able to work and did not have these difficulties before her stroke.[23]

When denying Plaintiff's disability claim, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 17, 2012, the alleged onset date, through her date last insured of December 31, 2017.[24]

- Step two: Plaintiff had the following medically determinable severe impairments: transient ischemic attack (TIA) with aneurysm in 2012, lumbar and cervical degenerative disc disease, neuropathy, anxiety, neurocognitive decline, and speech deficits.[25]

---

[21] AR 38–40, 47–48.

[22] AR 41–50.

[23] AR 50.

[24] AR 17.

[25] AR 17.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[26]

- RFC: Plaintiff had the RFC to perform light work:

  > She could lift up to 20 pounds, lift or carry up to 10 pounds frequently. Stand or walk for approximately 6 hours per 8-hour workday, and sit for approximately 6 hours per 8-hour workday, with normal breaks. The claimant would have needed a sit/stand option, defined as change from a standing position to a sitting position, or vice-versa, every 30 minutes for 5 minutes while remaining at the workstation. A sit/stand at will option was acceptable as well. She could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally stoop; and never crouch, kneel, or crawl. She could occasionally reach overhead, bilaterally. Frequently handle and finger. She would have needed to avoid all use of moving or dangerous machinery and all exposure to unprotected heights. The claimant would have needed low stress work, defined as no production pace conveyer belt type-work and a predictable work environment. Work that involved no more than occasional interaction with the public, coworkers, and supervisors.[27]

- Step four: Plaintiff was unable to perform past relevant work.[28]

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could have performed work that existed in significant

---

[26] AR 18–19.

[27] AR 19–23.

[28] AR 23–24.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

numbers in the national economy, such as electronics worker and marker.[29]

When assessing the medical-opinion evidence, the ALJ found:

- the examining opinion of N.K. Marks, Ph.D., and the reviewing opinions of Rita Flanagan, Ph.D., and Renee Eisenhauer, Ph.D. persuasive.

- some portions of the examining opinions of James Wahl, Ph.D., and James Opara, M.D., somewhat persuasive and other portions not persuasive.

- the reviewing opinions of Robert Hander, M.D., and Norman Staley, M.D., not persuasive.[30]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence.[31]

---

[29] AR 24–25.

[30] AR 22–23.

[31] AR 20–22.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[32] Plaintiff timely appealed to this Court.[33]

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[34] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[35] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[36] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[37] The Court considers the entire record.[38]

---

[32] AR 1–6.

[33] *See* 20 C.F.R. § 404.981.

[34] 42 U.S.C. § 405(g).

[35] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[36] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[37] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[38] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383,

1

2

3

4

5

Further, the Court may not reverse an ALJ decision due to a harmless error.[39] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[40] The party appealing the ALJ's decision generally bears the burden of establishing harm.[41]

### IV.     Analysis

**A.     Step Three (Listings): Plaintiff establishes consequential error.**

Plaintiff contends the ALJ erred by 1) failing to consider whether Plaintiff's impairments met or equaled Listings 11.04, 12.04, and 12.05, and 2) failing to find that Plaintiff's impairments met or medically equaled Listings 1.04A, 12.02 and 12.06. As discussed below, the ALJ erred by failing to consider Listing 11.04.

If a claimant meets all of the listing criteria, she is considered disabled at step three. A claimant who does not meet the listing criteria may still be considered disabled at step three if her impairments medically equal a listed

6

7

8

9

10

11

12

13

14

15

16

17

---

18

19

386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[39] *Molina*, 674 F.3d at 1111.

[40] *Id.* at 1115 (cleaned up).

[41] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

20

21

22

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1
2
3
4
5

impairment.[42] The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairments meet or equal one of the specified impairments set forth in the listings.[43] The ALJ need not recite the reasons for his step-three determination under the listings portion of the decision so long as the relevant evidence and underlying findings are discussed in the ALJ's decision.[44]

6
7

Here, the ALJ did not mention Listing 11.04, which applies to vascular insult to the brain and requires:

8
9
10
11
12
13
14
15
16

> A.    Sensory or motor aphasia resulting in ineffective speech or communication (see 11.00E1) persisting for at least 3 consecutive months after the insult; or
> B.    Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult; or
> C.    Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a) and in one of the following areas of mental functioning, both persisting for at least 3 consecutive months after the insult:
>> 1.    Understanding, remembering, or applying information (see 11.00G3b(i)); or
>> 2.    Interacting with others (see 11.00G3b(ii)); or
>> 3.    Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>> 4.    Adapting or managing oneself (see 11.00G3b(iv)).

17
18
19
20
21

---

[42] Soc. Sec. Ruling 17-2p. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

[43] 20 C.F.R. § 404.1520(a)(4)(iii); *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001).

22
23

[44] *Lewis,* 236 F.3d at 513.

Given the medical record following Plaintiff's vascular insult to the brain in October 2012, the ALJ erred by not discussing Listing 11.04. The medical records in January 2013—three months after her brain aneurysm—reflect that her coordination was abnormal, she struggled expressing her thoughts, and her speech occasionally stalled although she was able to eventually find the words.[45] In February 2013, she experienced dizziness at her physical therapy sessions.[46] Then in March 2013, during her neuropsychological examination with Dr. Wahl, he noted that Plaintiff's "[s]peech was moderately dysarthric but there was minimal stuttering"[47] and:

> Her test scores today suggested a significant decline in verbal functioning, especially concerning abstract reasoning skills, vocabulary, verbal attention and arithmetic. I would guess her current FSIQ represents a decline from previous levels of about 10 points. In addition to her verbal difficulties she also displayed slowed psychomotor speed, which is common in brain-injured patients.[48]

Although he opined that she was capable of engaging in appropriate social interaction and managing her own funds, he "suspect[ed] that her persistence,

---

[45] AR 276–77.

[46] AR 940, 935, 933.

[47] AR 263.

[48] AR 264–65.

concentration and attention will be sporadically impaired for some time. Again, it is unknown whether this will improve, and if so to what extent."[49]

The medical record clearly indicates that Plaintiff initially struggled with abnormal coordination, dizziness, weakness, speech, concentration, and attention due to her brain aneurysm. Then in 2016, about three years after the aneurysm, the medical record begins to indicate normal gait and infrequent speech challenges. Yet, a consultative psychodiagnostics evaluation in August 2017 with Dr. Marks reveals that Plaintiff continued to struggle with attention, focus, and switching from one task to another, even though she could take care of household tasks if given a sufficient amount of time to complete them.[50] On this record, the ALJ erred by not discussing Listing 11.04, particularly as to the period following the brain aneurysm.[51] This error was caused by the ALJ not separately considering Plaintiff's functioning in the period immediately following the brain aneurysm from her functioning during the latter part of the alleged disability period. Instead of separately considering these periods, the ALJ used Plaintiff's improvement during the alleged disability period as a basis to discount the medical opinions and

---

[49] AR 265.

[50] AR 423–27.

[51] *See Smith v. Kijakazi*, --- F.4th ----, 2021 WL 4486998 at 4–6 (9th Cir. Oct. 1, 2021).

1

2

Plaintiff's reported symptoms, thereby impacting the listings' analysis.[52] This error was consequential.

3

4

5

The ALJ's focus on Plaintiff's comparatively improved condition as of the date last insured permeated his entire listings' analysis. Therefore, the Court does not address Plaintiff's remaining listings' arguments.

6

**B.    Medical Opinions: Plaintiff establishes consequential error.**

7

8

9

Plaintiff argues the ALJ erred by failing to fully incorporate Dr. Marks' and Dr. Flanagan's opinions into the RFC after finding them persuasive. As discussed below, the ALJ erred as to Dr. Marks' opinion.

10

1.    <u>Standard</u>[53]

11

12

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings.[54] The ALJ need not however

13

———————————————

14

15

16

[52] AR 22 ("Although the testing was indicative of cognitive decline shortly after her TIA and aneurysm, the evidence demonstrates improved cognitive functioning over time. Thus, the undersigned finds [Dr. Wahl's March 2013] neuropsychological report and testing is not representative of her level of functioning throughout the relevant period. Ultimately, the undersigned finds the consultative psychological report from August 2017 . . . to be more persuasive as it is a better reflection of the claimant's true functioning during the period at issue.").

17

18

19

20

21

[53] 20 C.F.R. § 404.1520c.

22

[54] *Id.* § 404.1520c(a), (b).

23

"give any specific evidentiary weight" to a medical opinion.[55] The factors for

evaluating the persuasiveness of medical opinions and prior administrative

medical findings include, but are not limited to, supportability, consistency,

relationship with the claimant, and specialization.[56] Supportability and consistency

are the most important factors, and the ALJ is required to explain how both of

these factors were considered:[57]

> (1) Supportability. The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical
> finding(s), the more persuasive the medical opinions or prior
> administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more

---

[55] Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R.

§ 404.1520c(a).

[56] *Id.* § 404.1520c(c)(1)–(5). When assessing the medical source's relationship with

the claimant, the ALJ is to consider the treatment length, frequency, purpose, and

extent, and whether an examination was conducted. *Id.* The ALJ may also consider

whether the medical source has familiarity with the other record evidence or an

understanding of the disability program's policies and evidentiary requirements.

*Id.* § 404.1527(c)(6).

[57] *Id.* § 404.1520c(b)(2).

persuasive the medical opinion(s) or prior administrative medical
finding(s) will be.[58]

Typically, the ALJ may, but is not required to, explain how the other factors were
considered.[59]

    2.   <u>Dr. Marks</u>

In August 2017, Dr. Marks completed a psychodiagnostics evaluation of
Plaintiff and reviewed Dr. Wahl's 2013 neuropsychological screening.[60] Dr. Marks
noted that Plaintiff's speech was slow and hesitant, she had some difficulty finding
the words she was trying to use, she was anxious and depressed, her stream of
mental activity was organized but slow, she was orientated, her fund of knowledge
appeared to be poor, her cognitive abilities were estimated to be in the low average
range, she showed fair concentration, persistence, and pace, her short-term, long-
term, and working memory were intact, she exhibited abstract verbal reasoning,
and her problem solving and judgment appeared to be intact although the

---

[58] *Id.* § 404.1520c(c)(1)–(2).

[59] *Id.* § 404.1520c(b)(2). When two or more medical opinions or prior administrative
findings "about the same issue are both equally well-supported . . . and consistent
with the record . . . but are not exactly the same," the ALJ is required to explain
how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were
considered. *Id.* § 404.1520c(b)(3).

[60] AR 421–28.

information provided by her then-husband suggested that in actual life situations Plaintiff's judgment was poor and her problem solving weak. As for cognitive WMS-IV testing, Dr. Marks found that Plaintiff's poorest performance was for the Immediate Memory Index where she scored in the low average, as compared to her average scores for the other four Indexes. As compared to others her age, she was in the extremely low range for her Adaptive Behavior Assessment. For the Beck Depression System and the Beck Anxiety Inventory, Plaintiff scored in the moderate range. For Trail Making A, Plaintiff's results indicated mild to moderate impairment, and for Trail Making B, Plaintiff's results indicated significant to severe impairment.

Dr. Marks diagnosed Plaintiff with generalized anxiety disorder and major depressive disorder—moderate.[61] As to work limitations, Dr. Marks wrote, "testing suggest that [Plaintiff] may have some distractibility concerns in a work-related activity" and she "may experience some problems dealing with pressure in a competitive work setting due to her depression and anxiety."[62] Although the test results indicated that Plaintiff may have some difficulty with simple tasks, Dr. Marks opined that Plaintiff would not have difficulty understanding, carrying out, and remembering either complex or one-two step instructions in a work setting. Rather, Dr. Marks found the challenge for Plaintiff was in her ability to

---

[61] *Id.*

[62] AR 427.

sustain concentration and persist when switching from one task to another or with organizing and planning.[63] Dr. Marks opined that Plaintiff's prognosis was fair to good and that she would benefit from individual psychotherapy to address her depression and anxiety.[64]

The ALJ found Dr. Marks' opinion persuasive because "it is well supported by the psychodiagnostics interview, mental status exam, and WMS-IV testing" and that Dr. Marks' opinion "was consistent with the normal mental status examination findings in the counseling records."[65]

Plaintiff argues the ALJ erred by failing to incorporate Dr. Marks' persuasive opinion into the RFC, particularly her opinion that Plaintiff would have difficulty with simple tasks and would struggle with sustaining attention and focus. The Commissioner contends the ALJ did incorporate Dr. Marks' opinion into the RFC because it restricted Plaintiff to "low stress work, defined as no production pace conveyer belt type-work and a predictable work environment. Work that involved no more than occasional interaction with the public, coworkers, and supervisors."[66]

---

[63] AR 426–27.

[64] AR 426.

[65] AR 23.

[66] AR 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ rationally incorporated Dr. Marks' opinion that Plaintiff "may experience some problems dealing with pressure in a competitive work setting due to her depression and anxiety" by limiting her to low stress work. However, the ALJ failed to incorporate Dr. Marks' opinion that Plaintiff may be distracted at work and therefore would have difficulty sustaining concentration and persisting in a work-related activity at a reasonable pace.[67] Contrary to the Commissioner's assertion that the ALJ incorporated this opined limitation into the RFC by restricting Plaintiff to work that involved no more than occasional interaction with the public, coworkers, and supervisors, this restriction did not resolve the area of concern for which Dr. Marks assessed the concentration and persistence limitation. For instance, whereas Dr. Marks found that Plaintiff *could* maintain effective social interaction on a consistent and independent basis, his opined concentration and persistence limitations were based on the Trail Making Part B test results, her extremely low Adaptive Behavior Assessment System-3 results, and overall testing, psychodiagnostics interview, and clinical observations.[68] Therefore, the RFC limiting Plaintiff to occasional social interaction did not sufficiently incorporate Dr. Marks' opinion that Plaintiff would have problems concentrating and persisting in a work-related activity at a reasonable pace.

---

[67] AR 427.

[68] AR 426.

By not meaningfully explaining how Dr. Marks' opinion was fully incorporated into the RFC, the ALJ erred. This error was consequential because a significant-to-severe impairment in the ability to sustain concentration and persist when switching from one task to another, or with organizing and planning, may be work preclusive, as the vocational expert testified that a person who is off task due to lapses in concentration, persistence, and pace greater than 10 percent will be precluded from competitive work.[69]

3.    Dr. Flanagan

In September 2017, Dr. Flanagan reviewed the record.[70] She reviewed the medical evidence of record, diagnosed Plaintiff with generalized anxiety and major depression, and opined as to the B Criteria that Plaintiff was mildly limited in her abilities to understand, remember, or apply information; interact with others; and adapt or manage herself; and moderately limited in her ability to concentrate, persist, or maintain pace. As to the mental RFC assessment, Dr. Flanagan opined that Plaintiff was moderately limited in her ability to sustain attention and concentration for extended periods, as she would "experience occasional lapses in attention, attendance, and concentration, persistence, and pace due to mental health symptoms, but not at a level that precludes productive work activity."[71]

_____

[69] AR 55–57.

[70] AR 64–76.

[71] AR 74.

The ALJ found Dr. Flanagan's opinion was persuasive because it was based on a thorough written summary of the longitudinal record up to the date of the assessment, the evidence relied on fully supported her opinion, it was consistent with the longitudinal record, which the ALJ found to include unremarkable mental status findings and minimal mental health treatment, and consistent with Plaintiff's admitted ability to take care of her personal needs, drive, shop in stores, and manage her own finances.[72]

Plaintiff argues that, when Dr. Flanagan's medical opinion is considered, along with the testimony of the vocational expert that occasional lapses in attention, concentration, and pace preclude competitive employment, the ALJ erred by not finding Plaintiff unable to sustain work. The ALJ did not err in this regard. Although Dr. Flanagan found that Plaintiff had difficulties sustaining concentration and persistence, Dr. Flanagan opined that Plaintiff could still complete a normal workday and workweek. Contrary to Plaintiff's argument, there is no evidence that Dr. Flanagan defined "occasional" as meaning occurring up to one-third of the day. In this regard, Plaintiff relies on the vocational expert's testimony. However, it was Plaintiff's counsel who defined "occasional" as meaning one-third of the day in the question posed to the vocational expert:

---

[72] AR 23.

1

2

3

4

5

> Q    Separately, if an individual had occasional, one-third
> of the day, lapses in attention and concentration, persistence
> and pace, could such an individual sustain competitive
> employment?
>
> A    No.

6

Plaintiff's reliance on SSR 96-9p is also unavailing. That policy defines "occasional"

7

for purposes of exertional limitations, not nonexertional limitations. Even if it did

8

apply or was otherwise persuasive, SSR 96-9p provides a *ceiling*—not a floor—for

9

what qualifies as "occasional" under its provision, stating the term means "from

10

very little up to one-third of the time."[73] Moreover, there is no evidence that when

11

writing his report Dr. Flanagan used the term "occasional" consistent with SSR 96-

12

9p or  counsel's assigned meaning in his question. Therefore, this specific challenge

13

by Plaintiff to the ALJ's treatment of Dr. Flanagan's opinion is denied.

14

**C.    Borderline Age: Plaintiff fails to establish error.**

15

Plaintiff also argues the ALJ failed at step five to explain how Plaintiff's

16

borderline age was considered. Here, the ALJ mentioned that Plaintiff was 54

17

years old—an individual closely approaching advanced age—on the date last

18

insured and then listed the evidentiary considerations he relied on as to why he did

19

20

21

22

---

[73] SSR 96-6p at *3, *8.

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

not treat Plaintiff as a person of advanced age. The ALJ complied with his legal

requirements as to considering Plaintiff's borderline age.[74]

**D.    Other Steps: The ALJ must reevaluate.**

As discussed above, the ALJ's focus on Plaintiff's general capacity—both as

to her exertional and nonexertional abilities—over the entire period permeated the

ALJ's analysis. This not only consequentially affected the ALJ's failure to discuss

Listing 11.04 but also the ALJ's analysis of Plaintiff's symptom reports. Therefore,

Plaintiff's other challenges to the ALJ's decision are not addressed, other than to

mention that if the ALJ again discounts Plaintiff's reported symptoms, the ALJ

must ensure he provides specific, clear, and convincing reasons for discounting

each of Plaintiff's symptoms.[75]  "[P]roviding a summary of medical evidence . . . is

not the same as providing clear and convincing *reasons* for finding the claimant's

symptom testimony not credible."[76]

Here, although the ALJ supplemented his initial high-level reasons for

discounting Plaintiff's symptom reports with a few specific reasons, the only

specific reason for discounting Plaintiff's reported pain (low back, neck, and leg),

headaches, and fatigue was that Plaintiff engaged in "high functioning activities of

---

[74] *See Lockwood v. Comm'r Soc. Sec. Admin*, 616 F.3d 1068, 1071 (9th Cir. 2010).

[75] *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[76] *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (cleaned up).

daily living."[77] Moreover, as previously mentioned, the ALJ's failure to separately consider the period of time following the brain aneurysm from the latter period spanned by the medical records, consequentially impacted the ALJ's assessment of Plaintiff's symptom reports.[78]

Finally, as to Plaintiff's activities, the ALJ described them as the ability to "take care of personal needs such as showering and dressing," having a driver's license, driving, taking care of "household tasks such as sweeping, vacuuming, mopping, or doing laundry" although it took a significant amount of time to complete these household tasks, and shopping in stores if the store was not too busy.[79] The ALJ found these activities indicated that Plaintiff retained greater physical and mental functioning than she reported. These activities, however, can be done in less than two-hour intervals or with breaks.[80] Accordingly, on remand, if the ALJ relies on Plaintiff's activities of daily living to discount her reported symptoms, the ALJ is to more clearly explain how these activities are inconsistent with her reported pain, headaches, and fatigue, or are consistent with the ability to sustain work.

---

[77] AR 22.

[78] *See Smith*, 2021 WL 4486998 at 4–5.

[79] AR 22.

[80] *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

1

2

**E.    Remand for further proceedings.**

Plaintiff submits remand for payment of benefits is warranted.

If the three-part credit-as-true analysis is satisfied, the decision whether to remand a case for additional evidence, or simply to award benefits, is within the Court's discretion.[81] Remand for further proceedings is the usual course, absent clear evidence from the record that a claimant is entitled to benefits and no further proceedings will be useful.[82]

Here, the ALJ erred by failing to provide legally sufficient reasons for failing to incorporate Dr. Marks' opinion that Plaintiff was significantly limited in her ability to persist, concentrate, and maintain attention. However, neither Dr. Marks nor the ALJ translated these limitations into specific amounts of time that Plaintiff would be off-task or absent from work. Therefore, even if this opinion is credited as true and considered along with the vocational expert's testimony that being off task more than 10 percent of the time precludes competitive employment,[83] it is not clear that the ALJ would be required to find Plaintiff disabled. Therefore, further

_____

[81] *Garrison v. Coleman*, 759 F.3d 995, 1020 (9th Cir. 2014); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

[82] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

[83] AR 57.

proceedings are necessary so that the ALJ can translate Dr. Marks' opined limitations into specific amounts of time off task or absent from work. Also on remand, based on Plaintiff's more severe symptoms following her brain aneurysm, the ALJ is to consider on remand whether, at a minimum, a closed period of disability is to be awarded.[84]

## F.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The case caption is to be **AMENDED** consistent with footnote 2.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3.    The Commissioner's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

4.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff RESERVING and REMANDING the matter to the Commissioner of

---

[84] Consistent with Dr. Wahl's and Dr. Marks' opinions, a clinician in October 2017 noted that Plaintiff's thought process was slow, she struggled to remember details at times, and she rambled at times. AR 883. Then by 2018 (after the date last insured), Plaintiff's psychotherapy, counseling, and medical management notes reflect that although she had family and financial stressors, her speech, attention, focus, insight, and judgment were appropriate to fair. AR 500–06, 517–75, 599, 603–05, 609–15, 622–52, 879–90. *But see* AR 588.[84]

Social Security for further proceedings pursuant to sentence four of 42

U.S.C. § 405(g).

5.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 2nd day of November 2021.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge